## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

WENDY M.,

      Plaintiff,

v.                          CIVIL ACTION NO. 2:23-cv-00240

MARTIN J. O'MALLEY
Commissioner of Social Security,[1]

      Defendant.

### PROPOSED FINDINGS & RECOMMENDATION

Plaintiff Wendy M. ("Claimant") seeks review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–33. By standing order, this matter was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 2.) Presently pending before this Court are Claimant's Brief in Support of Complaint (ECF No. 5), the Commissioner's Brief in Support of Defendant's Decision (ECF No. 6) and Claimant's Reply Brief (ECF No. 7).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY**

---

[1] Commissioner O'Malley was substituted in place of Acting Commissioner Kilolo Kijakazi following O'Malley's appointment on December 20, 2023.

Claimant's request to reverse the Commissioner's decision (ECF No. 5), **GRANT** the Commissioner's request to affirm his decision (ECF No. 6), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

## I.    BACKGROUND

### A. Information about Claimant and Procedural History of Claim

Claimant was 41 years old at the time of her alleged disability onset date and 43 years old on the date of the decision by the Administrative Law Judge ("ALJ") (Tr. 155, 354). She is a high school graduate (Tr. 377), and has past work experience as a receptionist, office manager, referral clerk, and as a receptionist/medical records clerk (Tr. 154, 187-188, 365). Claimant alleges that she became disabled on October 6, 2019, due to back injury, right wrist fracture, hypertension, depression, anxiety, obesity, urinary incontinence, and edema (Tr. 354-355, 376).

Claimant  protectively filed her application for DIB on March 4, 2020 (Tr. 141, 251-355). Her claim was initially denied on November 10, 2020, and again upon reconsideration on June 10, 2021 (Tr. 238, 258-263, 270-76). At Claimant's written request, ALJ Nathan Brown held a hearing via videoconference on June 1, 2022 (Tr. 164-196, 277-78), during which Claimant, who was represented by counsel, offered testimony; additionally, an impartial vocational expert offered testimony to assist the ALJ in his determination (Tr. 162-96). On June 13, 2022, the ALJ entered an unfavorable decision (Tr. 141-55). Claimant then sought review of the ALJ's decision by the Appeals Council on July 11, 2022 (Tr. 5). The Appeals Council denied Claimant's request for review on January 27, 2023, and the ALJ's decision became the final decision of the Commissioner on that date. *Id.*

Claimant timely brought the present action on March 28, 2023, seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) The Commissioner filed a transcript of the administrative proceedings on May 16, 2023 (ECF No. 4). Claimant subsequently filed her *Brief in Support of Complaint* (ECF No. 5) on June 14, 2023, and the Commissioner filed his *Brief in Support of Defendant's Decision* on July 11, 2023 (ECF No. 6). Claimant then filed her Reply Brief on July 25, 2023 (ECF No. 7). As such, this matter is fully briefed and ready for resolution.

### B. Relevant Medical Evidence

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and summarizes the relevant portions[2] here for the convenience of the United States District Judge.

### 1. Treatment Records

Claimant's records indicate that she sustained injuries from a motor-vehicle accident in October 2019 (Tr. 445, 462-76). After the accident, Claimant stated she experienced an increase in symptoms of depression in response to ongoing pain in her wrist and back (Tr. 765). Nevertheless, treatment providers described Claimant as having a "euthymic"—e.g., equilibrious—mood, with normal thought processes (Tr. 1468, 1472).

The following year in August 2020, Claimant reported to her primary-care provider that her back pain had improved and her mobility increased, which made her feel "very positive overall" (Tr. 663). She denied a recurrence of depressive

---

[2] As both parties noted in their briefing, this matter turns on a single issue—the applicable standard for an ALJ's consideration of mild mental-health functional limitations—where the key facts are not in dispute. (*See* ECF No. 5 at 1 (explaining that Claimant's brief "will only briefly highlight a few key facts . . . [d]ue to the nature of the appellate challenges brought herein," where Claimant does not presently challenge the ALJ's decision regarding any of her physical impairments).) As a result, the undersigned's summary of the record evidence is limited to the evidence and ALJ findings that are pertinent to Claimant's alleged mental impairments in this specific context.

symptoms and noted overall improvement in mood, stating she was currently "really good" (Tr. 663).

In October 2020 and December 2020, treatment providers again described Claimant as having an euthymic mood with normal thought processes (Tr. 1436, 1441). Despite being on an established medication regimen of Cymbalta and Buspar, however, Claimant renewed her reports of depression and anxiety at a medical consultation with Dennis Kojsza, Ph.D. in January 2021 (Tr. 630). On examination, Dr. Kojsza noted that while Claimant had a depressed mood, she also had appropriate behavior, normal speech, normal thought processes, and full orientation (Tr. 630). Dr. Kojsza assessed Claimant with recurrent depression and anxiety and suggested that she receive individual psychotherapy (Tr. 630).

In February 2021, Claimant denied experiencing depression or anxiety at a visit with Zaid Al-Qudah, M.D. (Tr. 509). Dr. Al-Qudah observed that Claimant had "good mood and affect," was alert and fully oriented, and had normal memory and attention (Tr. 510). Also in February 2021, at a pre-surgical psychological evaluation for bariatric surgery, Claimant stated that her pain aggravated her mood, but psychologist Stephanie Cox, Ph.D., noted Claimant's "good" mood, euthymic affect, normal thought processes, linear and coherent speech, good eye contact, adequate energy, adequate sleep, no self-harm ideation, and fair judgment and insight (Tr. 611-12).

The following month in March 2021, Claimant attended a pain management consultation with Corinne Layne-Stuart, D.O., where she reported that her depression was "fairly well controlled" on Cymbalta; further, Claimant denied any side effects (Tr. 584). At a follow-up appointment with Dr. Al-Qudah in April 2021, Claimant again denied anxiety and depression (Tr. 503).

In May 2021, Claimant attended an initial intake assessment at FMRS, Inc. Health Systems to establish more specialized psychological treatment (Tr. 1498-1504). According to treatment notes, Claimant presented as fully oriented, with a cooperative attitude, euthymic mood with appropriate affect, normal speech with logical/coherent thought content, and was described as a good historian (Tr. 1502-03).

In June 2021, Claimant reported worsening depression and anxiety (Tr. 1505). On examination, Claimant's provider noted a well-oriented and cooperative attitude, sufficient attention/concentration, normal memory, logical/coherent thought processes, and appropriate judgment/insight (Tr. 1507-08). Her provider's treatment plan renewed Claimant's Cymbalta prescription, and added a prescription for Wellbutrin (Tr. 1508). At a follow-up appointment the next month in July 2021, Claimant stated, "I think the Wellbutrin is doing something. I feel better" (Tr. 1511). In October 2021, she expressed that "things have been going ok" (Tr. 1569). On mental status examination, Claimant again had a euthymic mood, appropriate affect, sufficient concentration, normal memory, logical/coherent thought processes, appropriate thought content, and appropriate judgment/insight (Tr. 1569-70). While a follow-up appointment on January 14, 2022, documented increased anxiety and some irritability, Claimant's symptoms notably improved several months later, and her dosage of Wellbutrin was lowered (Tr. 1883, 1947).

## 2. *Opinion Evidence*

In September 2020, Claimant underwent a psychological examination with Larry Legg, M.A. (Tr. 456-59). On examination, Claimant reported experiencing a depressed mood, loss of interest/pleasure in most activities, as well as anxiety, fatigue, poor concentration, and irritability (Tr. 457). Additionally, Claimant exhibited a dysphoric

mood; however, Mr. Legg also noted that Claimant appeared motivated, cooperative, and polite; she had normal speech; she was well-oriented; she had good insight and normal judgment; she exhibited normal immediate, recent, and remote memory; and she displayed normal concentration, persistence, and pace (Tr. 458). Further, Claimant had normal social functioning and reported that her most enjoyable activities are interacting with family and friends (Tr. 458). Mr. Legg diagnosed Claimant with major depressive disorder and generalized anxiety disorder (Tr. 459).

In September 2020, James Binder, M.D., a State agency psychologist, reviewed Claimant's medical records and found that Claimant did not have a severe mental impairment (Tr. 216). In applying the psychiatric review technique, Dr. Binder found Claimant had "mild limitations" in all four of the broad areas of mental functioning (Tr. 216). Dr. Binder did not assess any work-related limitations for Claimant's mental-health impairments in a work setting (Tr. 216). In June 2021, Jeff Harlow, Ph.D., another State agency psychologist, reviewed Claimant's updated medical records and concurred with Dr. Binder's findings (Tr. 248-49).

### 3. *Hearing Testimony*

Claimant testified at her hearing before an Administrative Law Judge (ALJ) on June 1, 2022 (Tr. 164-196). Additionally, a vocational expert ("VE") offered testimony at the hearing in order to assist the ALJ's determination (Tr. 187-95). The VE characterized Claimant's past work, in relevant part, as a receptionist as semi-skilled in nature. (Tr. 187.) During cross-examination by Claimant's attorney, the VE testified that all three of the representative occupations he identified would be precluded if an individual was unable to work with the general public, customer service, or crowds (Tr. 193). (*See* ECF No. 5 at 8-9 (citing Tr. 187).) The VE classified Claimant's work experience as a composite

job of receptionist and medical records clerk, both of which were classified as semi-skilled in nature (Tr. 188). The VE indicated that Claimant additionally performed the job of office manager, which was classified as skilled in nature (Tr. 188). Finally, the VE testified that Claimant performed the job of administrative clerk, which was semi-skilled in nature (Tr. 188). The ALJ posed a hypothetical scenario to the VE including all of Claimant's physical and mental limitations as outlined in the RFC finding below, and the VE responded that the hypothetical individual would be able to perform Claimant's past work (Tr. 189).

### 4. *Other Evidence*

As part of her disability application, Claimant completed two Adult Function Reports describing her activities of daily living and symptoms (Tr. 392-99, 408-15). In the first report, while Claimant stated that depression kept her from leaving her home, she also reported that she still tried going out, could do so alone, drove a car, and shopped in stores (Tr. 392-95). She also indicated that she prepared her own meals and managed her own finances (Tr. 394-95). Regarding social activities, Claimant reported that she interacted with family members and friends and did not have a problem getting along with others (Tr. 396-98). Although Claimant suggested she had problems with memory and concentration, she also indicated she did not need reminders to take care of her personal needs and could follow written instructions "good after going back & forth reading" (Tr. 394, 397).

In the second function report, Claimant described having problems with concentration and following spoken instructions (Tr. 408, 413). She also reported having no need for any special reminders to take care of personal needs, grooming, or to take medication, and she was able to prepare simple meals for herself, drive a car, handle her

7

own personal finances, read for recreation, and connect with friends and family by talking and texting over the phone (Tr. 410-12).

### C. Sequential Evaluation Process

An individual unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" is considered to be disabled and thus eligible for benefits. 42 U.S.C. § 423(d)(1)(A). The Social Security Administration has established a five-step sequential evaluation process to aid in this determination. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). The ALJ proceeds through each step until making a finding of either "disabled" or "not disabled"; if no finding is made, the analysis advances to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 990 n.* (4th Cir. 1985); *see Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012) ("To establish eligibility for . . . benefits, a claimant must show that he became disabled before his [date last insured].").

At the first step in the sequential evaluation process, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the ALJ moves on to the second step. At the second step, the ALJ considers the combined severity of the claimant's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The ALJ gleans this information from the available medical evidence. *See Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). An individual impairment or combination of impairments that is not classified as "severe"

and does not satisfy the durational requirements will result in a finding of "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). Similarly, at the third step, the ALJ determines whether the claimant's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (quoting *Bowen v. City of New York*, 476 U.S. 467, 471 (1986)).

"If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity" ("RFC") before proceeding to the fourth step. *Mascio*, 780 F.3d at 635; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant's RFC reflects "her ability to perform work despite her limitations." *Patterson v. Comm'r*, 846 F.3d 656, 659 (4th Cir. 2017); *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (defining claimant's RFC as "the most the claimant can still do despite physical and mental limitations that affect his ability to work" (alterations and internal quotation marks omitted)); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ "first identif[ies] the individual's functional limitations or restrictions and assess[es] his or her work-related abilities on a function-by-function basis," then "define[s] the claimant's RFC in terms of the exertional levels of work." *Lewis*, 858 F.3d at 862. "In determining a claimant's RFC, the ALJ must consider all of the claimant's medically determinable impairments . . . including those not labeled severe" as well as "all the claimant's symptoms, including pain, and the extent to which his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Monroe*,

826 F.3d at 179 (alterations and internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1545(a), 416.945(a).

When the claimant alleges a mental impairment, the first three steps of the sequential evaluation process and the RFC assessment are conducted using the "Psychiatric Review Technique" ("PRT"), a "special technique" that is specific to evaluation of mental impairments in adults under "Part A" of the Listing of Impairments. 20 C.F.R. §§ 404.1520a(a), 416.920a(a); *see Patterson*, 846 F.3d at 659. *See* also POMS at DI 23010.005 (May 23, 2023) (explaining the PRT process). Applying this technique, the ALJ considers a claimant's pertinent symptoms, signs, and laboratory findings to determine whether the claimant has "a medically determinable mental impairment(s). *Patterson*, 846 F.3d at 659. The next step in the PRT process requires the ALJ to "rate[s] the degree of functional limitation resulting from the impairment(s)" according to certain criteria. 20 C.F.R. §§ 404.1520a(b), 416.920a(b); *see id.* §§ 404.1520a(c), 416.920a(c). "Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment." *Patterson*, 846 F.3d at 659; *see* 20 C.F.R. §§ 404.1520a(d), 416.920a(d). "If the mental impairment is severe but is not a listed impairment, the ALJ must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities." *Patterson*, 846 F.3d at 659.

After assessing the claimant's RFC, the ALJ at the fourth step determines whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *Monroe*, 826 F.3d at 180. If she does not, then "the ALJ proceeds to step five." *Lewis*, 858 F.3d at 862.

The fifth and final step requires the ALJ to consider the claimant's RFC, age, education, and work experience in order to determine whether she can make an

adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this point, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy.'" *Lewis*, 858 F.3d at 862 (quoting *Mascio*, 780 F.3d at 635). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Id.* (quoting *Mascio*, 780 F.3d at 635). If the claimant can perform other work, the ALJ will find her "not disabled." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she cannot perform other work, the ALJ will find her "disabled." *Id.*

Applying the sequential evaluation process in this case, the ALJ concluded that Claimant had not engaged in substantial gainful activity since October 6, 2019, the alleged onset date. (Tr. 144.) Next, the ALJ considered which of Claimant's asserted impairments were "severe" pursuant to 20 C.F.R. § 404.1520(c). He determined that Claimant had the following severe impairments: degenerative disc disease post-surgical intervention with radiculopathy; tibioperoneal disease of the left lower extremity; post-traumatic arthritis; sacroiliitis; chronic venous insufficiency; and obesity (Tr. 144). Notably, the ALJ found, in relevant part, that Claimant's impairments of bipolar/depressive disorder and generalized anxiety disorder were non-severe impairments (Tr. 144-47).[3]

At step three of the sequential evaluation process, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments (Tr. 147-49). The ALJ found that Claimant had no limitation in understanding, remembering, and applying information (Tr. 146). However, the ALJ

---

[3] The ALJ also found that the following impairments were non-severe: Claimant's deep vein thrombosis of the right lower extremity; COVID; arm/wrist fracture; gastroesophageal reflux disease; residuals from gastric sleeve gastrectomy; bipolar/depressive disorder; and generalized anxiety disorder (Tr. 144-147).

found mild functional limitations in the remaining three areas of mental functioning, had mild limitations in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself (Tr. 146-147).

Next, the ALJ found that Claimant had the residual functional capacity (RFC) to perform light work, except she could operate foot controls bilaterally and could occasionally climb ramps and stairs, stoop, kneel, crawl, work at unprotected heights and around moving mechanical parts, and work in vibration (Tr. 149). She could never crouch or climb ladders, ropes, or scaffolds (Tr. 149). Claimant could frequently balance, operate a motor vehicle, and work in extreme cold and extreme heat (Tr. 149).

At step four, the ALJ found that Claimant was capable of performing past relevant work as a receptionist, office manager, and administrative clerk as these jobs are generally performed in the national economy (Tr. 154). Accordingly, the ALJ found Claimant not disabled, and her DIB claim was denied. (Tr. 154-55).

## II.    LEGAL STANDARD

This Court has a narrow role in reviewing the Commissioner's final decision to deny benefits: it "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and it must be "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In other words, this Court "looks to [the] administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* (alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "In reviewing

for substantial evidence, [this Court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Even if "reasonable minds [could] differ as to whether a claimant is disabled," this Court upholds the ALJ's decision if it is supported by substantial evidence. *Id.* (quoting *Craig*, 76 F.3d at 589).

## III.    ANALYSIS

Claimant raised a single argument on review pursuant to 42 U.S.C. § 405(g). After the ALJ determined that Claimant had mild functional limitations due to her mental-health impairments, he did not expressly discuss those mild limitations in the section of his written decision analyzing her RFC. An ALJ's RFC finding must include all of the limitations the ALJ has found to be supported by the evidence of record. *See* Social Security Ruling (SSR) 85-15, 1985 WL 56857. According to Claimant, a finding of functional limitations--even mild ones--must find adequate expression via specific functional limitations in the RFC determination, and therefore remand is required because the ALJ failed to either adopt mental limitations he found credible in his RFC or to explain in the RFC section of the written decision why he did not include specific mental limitations in the RFC. (ECF No. 5 at 3.)

The parties do not dispute that an ALJ's finding of functional mental-health limitations must find "adequate expression" via specific functional limitations in the RFC determination, *unless* the ALJ adequately explained the basis for not including them. (ECF No. 5 at 3 (citing *Wells v. Colvin*, 727 F.3d 1061, 1068-71 (10th Cir. 2013) (explaining

that an ALJ's "PRT findings"[4] must find adequate expression via specific functional limitations in the RFC determination, *or the ALJ must adequately explain their basis for not doing so.*") (emphasis added).) Here, Claimant did not identify any inaccuracies in the ALJ's RFC determination. Instead, Claimant specifically challenged the ALJ's failure to explain in the written decision how he determined that Claimant's mild mental impairments would impact Claimant's ability to perform semi-skilled work with an SVP rating of 4. (ECF No. 5 at 9-10.) As Claimant concluded in her *Brief*, "[t]he ALJ's error is one of failure to articulate" Claimant's mild mental impairments as part of the ALJ's written RFC determination—which, according to Claimant's own narrow interpretation, results in a per se finding of error. *Id.* at 10.

In response, the Commissioner argued that the ALJ's analysis and consideration of Claimant's mental impairments is supported by substantial evidence. (*See* ECF No. 6.) The Commissioner contends that the ALJ did consider Claimant's mental impairments in the RFC analysis, and in reading the ALJ's decision as a whole, the ALJ's analysis appropriately included consideration of Claimant's mild limitations. *See id.* The Commissioner further argued that Claimant's claim of legal error is not supported by prior cases from this Court. *See id.*

The Commissioner distinguished mental-health limitations that are *moderate* or greater, from those that—like the limitations in the instant matter—are *mild*. (ECF No. 6.) According to the Commissioner, when finding that Claimant was not disabled, the ALJ found that Claimant's anxiety and depression caused no more than mild limitations broadly in terms of mental functioning—meaning that Claimant's ability to function

---

[4] As set forth *supra*, the "Psychiatric Review Technique" ("PRT") is a "special technique" specific to evaluation of mental impairments in adults under "Part A" of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520a(a), 416.920a(a); *see Patterson*, 846 F.3d at 659.

"appropriately, effectively, and on a sustained basis" was "slightly limited," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F2b—and thus that those impairments were non-severe (Tr. 145-47). As the Commissioner explained, "though some consideration is required, there is no requirement that the RFC reflect a claimant's non-severe impairments to the extent the ALJ reasonably determines such impairments do not actually create functional limitations." *Perry v. Colvin*, No. 2:15-CV-01145, 2016 WL 1183155, at *5 (S.D. W. Va. Mar. 28, 2016). Accordingly, the Commissioner argued that, when the ALJ found Claimant's mental ability to function "appropriately, effectively, and on a sustained basis" was no more than "slightly limited," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F2b, and thus that she had non-severe mental impairments (Tr. 145-147), the ALJ came to the conclusion that mental work-related limitations were simply not warranted in the RFC.

On review, the undersigned **FINDS** that the ALJ did not err. Certainly, Claimant is correct that when an ALJ is confronted with ***moderate*** limitations in concentration, persistence, and pace, he must account for those limitations in the RFC analysis, or provide an explanation why limitations are not warranted—and failure to do so generally constitutes error. *Shinaberry v. Saul*, 952 F.3d 113, 121 (2020). However, the Fourth Circuit has not yet spoken on this issue in the context of ***mild*** limitations in concentration, persistence, or pace in a claimant's RFC. *See Younger v. Soc. Security Admin.*, 2:18-cv-182, 2019 WL 3432771, at *5 (June 21, 2019), *adopted*, 2:18-cv-182, 2019 WL 3451305 (E.D. Va. July 29, 2019).

Notably, Claimant relied on authority from outside the Fourth Circuit in support of her argument "that mental functional limitations found in the PRT analysis must somehow be accounted for in the in the RFC finding." (ECF No. 5 at 3-4.) This is telling, as Claimant's assignment of error has been addressed—and rejected—by this Court on

numerous occasions. Claimant partially acknowledges this in her *Brief*. In support of her argument, Claimant relied upon the Fourth Circuit's opinion in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015) (dealing with *moderate* limitations), as well as authority from the Eleventh Circuit Court of Appeals and the Third Circuit Court of Appeals. (ECF No. 5 at 3 (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011); *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004)). Claimant conceded, however, that the opinions she cited involved *moderate* functional limitations, and "did not deal directly with mild mental functional limitations." (ECF No. 5 at 3 n.2.)

Judicial opinions from within the Fourth Circuit frequently differentiate the moderate and mild distinction. The exact issue raised by Claimant has been largely rejected when—as is the case here—an ALJ finds that a claimant's mental health does not prevent her from performing basic work activities when substantial evidence demonstrates she is stable on medication[5] and her mental impairments are controlled. For instance, in the *Younger* opinion cited *supra*, the ALJ had determined that the claimant had mild limitations in understanding, remembering, and applying information; mild limitations in concentration, persistence, or pace; moderate limitations in interacting with others; and no significant limitations in adapting or managing oneself. *Younger*, 2019 WL 3432771 at *3. The claimant in *Younger* made substantially the same argument advanced by Claimant in the instant matter; however, the claimant did not prevail on this approach. The U.S. District Court for the Eastern District of Virginia explained in *Younger* that the Fourth Circuit has not extended its *Mascio* holding—which involved *moderate* limitations—to a per se rule requiring an ALJ to expressly account for

---

[5] Generally, if a symptom can be reasonably controlled by medication or treatment, it is not disabling. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986).

*mild* limitations in the RFC analysis. *See also Kimberly B. C. v. Kijakazi*, 1:22CV617, 2023 WL 4974033, at \*6 (M.D.N.C. Aug. 3, 2023) (stating that "the weight of post-*Mascio* authority among the district courts in the Fourth Circuit does not favor extending *Mascio* to <u>mild</u> limitations in the broad functional areas"); *Key v. Kijakazi*, No. 5:23-CV-00011-MOC, 2023 WL 4904252, at \*5 (W.D.N.C. Aug. 1, 2023); *Lori A. J. v. Kijakazi*, 2:22-CV-131, 2023 WL 3069394, at \*6 (Apr. 5, 2023), *adopted*, 2023 WL 3060789 (E.D. Va. Apr. 24, 2023).

Claimant's interpretation also sidesteps the Fourth Circuit's specific rejection of imposing "per se rule[s]" in the context of how an ALJ's finding in the four broad areas of mental functioning (understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself) must be addressed in the residual functional capacity assessment. *See Shinaberry v. Saul*, 952 F.3d 113, 121-22 (4th Cir. 2020) (rejecting a per se rule in the context of a "moderate" limitation in concentration, persistence, or pace) (citing *Mascio*, 780 F.3d at 634; *accord Biestek*, 139 S. Ct. at 1157 (instructing that "a categorical rule" is inappropriate in substantial evidence review because "[t]he inquiry, as is usually true in determining the substantiality of evidence, is case-by-case"). Furthermore, the Supreme Court has specifically emphasized that this determination does not lend itself well to categorical rules, and instead should be evaluated on a "case-by-case" basis. *Biestek*, 139 S. Ct. at 1156-1157.

The District Court's opinion in *Kimberly B. v. Soc. Sec. Comm'r*, a strikingly similar matter before the U.S. District Court for the Middle District of North Carolina, is illustrative in this context. In that case, the claimant did not suggest on appeal what additional limitations the ALJ should have included in the RFC to account for the

Claimant's mild limitations. *Kimberly B. v. Soc. Sec. Comm'r*, 1:22CV617, 2023 WL 4974033, at *6 (M.D.N.C. Aug. 3, 2023). Because the claimant in that case "did not explain what functional limitations [the] ALJ [ ] should have included in the RFC or discuss why any mental limitations were warranted in light of the record as a whole," the District Court rejected the claimant's argument that the ALJ failed to account for mild mental limitations in the RFC. *Id. See also Humphries v. Colvin*, 3:15CV376, 2016 WL 8223429, at *5 (W.D.N.C. Oct. 17, 2016) (unpublished).

Similarly, in the *Humphries* matter before the U.S. District Court for the Western District of North Carolina, the claimant failed to obtain relief on a similar claim when "it d[id] not appear that [the p]laintiff [wa]s actually alleging based on contradictory evidence in the record that she ha[d] limitations that [we]re not addressed by the RFC; rather, she [wa]s simply arguing that her 'at most, mild limitations' [we]re cause for remand because the ALJ's decision d[id] not apply the same analysis the Fourth Circuit [in *Mascio*] would require for review of 'moderate' limitations." *Id.* Finally, even if the Fourth Circuit were to adopt a different standard, the undersigned **FINDS** that the ALJ's conclusions are supported by substantial evidence, and Claimant has not met her burden to demonstrate error. Claimant essentially argues for a per se finding of reversible error if an ALJ assesses a mild limitations but does not expressly discuss those limitations subsequently in formulating the RFC. However, Claimant's interpretation controverts the current state of the law within the Fourth Circuit regarding mild limitations. Rather than a per se rule, the adequacy of the RFC determination depends upon the specific facts of each case. The Supreme Court has also specifically emphasized that this determination does not lend itself well to categorical rules, and instead should be evaluated on a "case-by-case" basis. *Biestek*, 139 S. Ct. at 1156-1157. Pursuant to this "case-by-case" standard,

"[t]he driving consideration is whether the ALJ's analysis allows for meaningful judicial review." *Owens v. Kijakazi*, No. 22-1273, 2023 WL 2344224, at *3 (4th Cir. Mar. 3, 2023).

Here, in reading the ALJ's decision as a whole, his analysis appropriately included consideration of Claimant's mild limitations, and explained the ALJ's basis for his treatment of the mild mental-health limitations, in sufficient detail to allow the Court to confirm that the ALJ's determination is supported by substantial evidence. (Tr. 145-47). Considering whether Claimant needed to be limited in terms of the complexity of tasks or instructions, interacting with others, or adapting to changes, the ALJ expressly found that such restrictions were unwarranted because Claimant had largely normal mental status examinations and responded well to treatment (Tr. 146-47). Critically, the ALJ then traced his reasoning and tethered his conclusions to specific evidence— affording the Court a clear picture of the basis for his conclusion. (*See* ECF No. 6 at 2.) Specifically, the ALJ highlighted that Claimant's treatment records reflect that she received conservative mental-health treatment with medication, with positive results. She told her treatment providers that she felt better and that "things have been going okay" (Tr. 1511, 1569, 1947). As the ALJ highlighted, Claimant's treatment records showed normal psychomotor behavior, immediate memory, recent memory, remote memory, concentration, attention span, persistence, pace, and social functioning (Tr. 146-47, 458, 606, 647, 658, 661, 671, 690, 1353). Further. the ALJ explained that Claimant was independent in personal care, that she prepared her own meals, washed dishes, played games on her phone, watched television, could do laundry, and walked daily on a treadmill (Tr. 147, 409-10, 458). Based on this evidence, the ALJ did consider Claimant's mental impairments in the RFC analysis. Based on this evidence, the ALJ explained that

Claimant's mental impairments allowed Claimant to perform work consistent with the RFC finding that included no specific limitations on mental activities (Tr. 149).

The ALJ's thorough analysis of Claimant's treatment records set forth a logical connection between the evidence and his conclusion. Thus, he did not leave a reader "to guess about how the ALJ arrived at his conclusions." *See Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015). A reviewer can "fathom the [ALJ's] rationale in relation to evidence in the record," which allows for meaningful judicial review, and makes remand unnecessary. *Britt v. Saul*, 860 F. App'x 256, 262 (4th Cir. 2021) (quote and alterations omitted). *See also Garland v. Ming Dai*, 141 S. Ct. 1669, 1679 (2021) (reiterating that judicial review of an administrative decision is not hampered so long as "the agency's path may reasonably be discerned.").

In summary, the ALJ did not err by creating an RFC that did not include or expressly address RFC limitations for Claimant's mental impairments under the circumstances of this case. The ALJ applied the proper legal standard considering *Mascio* and other cases from this Court. Furthermore, even if a limitation from a mild impairment or an express reference to this issue in the ALJ's written decision were required in the RFC analysis, the ALJ sufficiently explained why he did not include a limitation for Claimant's mental impairments. With specific citations to the record, the ALJ's robust analysis provided a clear and reasonable basis for determining that Claimant's mild impairments in her ability to concentrate, persist, and keep pace, adapt, and manage herself would have no more than a minimal impact upon her ability to do basic work activities. The ALJ created an accurate and logical bridge between the evidence of Claimant's mental impairments and the ALJ's RFC determination, and reasonably decided that no limitations were necessary under the circumstances. Accordingly, on

review the undersigned **FINDS** that the ALJ's conclusions are supported by substantial evidence, and Claimant has not demonstrated reversible error.

### IV.    CONCLUSION

Because substantial evidence supports the Commissioner's decision and the correct legal standard was applied, and for the foregoing reasons, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Claimant's request to reverse the Commissioner's decision (ECF No. 5), **GRANT** the Commissioner's request to affirm his decision (ECF No. 6), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this action from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown. Copies of any objections shall be served on opposing parties and provided to Judge Goodwin.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals. 28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

ENTER:        February 29, 2024

Dwane L. Tinsley
United States Magistrate Judge